Justin A. Palmer (SBN. 270857)
**FILER | PALMER, LLP**
249 E. Ocean Blvd., Suite 501
Long Beach, CA 90802
Telephone:   (562) 304-5200
Facsimile:    (562) 394-0504
Email:         justin@filerpalmer.com

Counsel for Plaintiff,
KIMBERLY SMITH

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY SMITH,<br><br>              Plaintiff,<br><br>       vs.<br><br>COUNTY OF LOS ANGELES, a Governmental Entity; DEPUTY TY SHELTON, DEPUTY RUBEN PERALES, DEPUTY LOUIE HERRERA and DEPUTY KYLE MURPHY ; and DOES 1-10 inclusive.<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) DEPRIVATION OF CIVIL RIGHTS – UNLAWFUL ENTRY (42 U.S.C. § 1983)<br>2) UNREASONABLE SEARCH AND SEIZURE – EXCESSIVE FORCE (42 U.S.C. § 1983)<br>3) UNREASONABLE SEARCH AND SEIZURE – EXCESSIVE FORCE (42 U.S.C. § 1983)<br>4) MUNICIPAL & SUPERVISORY LIABILITY (42. U.S.C. § 1983)<br>**DEMAND FOR JURY TRIAL** |

COME NOW, Plaintiff Kimberly Smith, for her complaint against Defendants COUNTY OF LOS ANGELES, DEPUTY TY SHELTON, DEPUTY RUBEN PERALES, DEPUTY LOUIE HERRERA, DEPUTY KYLE MURPHY, and Does 1-10, inclusive, and allege as follows:

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

## INTRODUCTION

1.      This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the force used during the murder of Michael Thomas, Plaintiff's life partner.

## JURISDICATION AND VENUE

2.      This Court is the proper Court because the alleged damages exceed the jurisdictional minimum of the Court.

3.      Venue is proper in this Court because the negligent acts and/or omissions and the incident causing Plaintiffs' damages occurred in Los Angeles County, State of California.

## PARTIES

4.      At all relevant times, Plaintiff, Kimberly Smith ("Plaintiff") was an individual residing in the County of Los Angeles, California.

5.      At all relevant times, **Defendant County of Los Angeles ("COLA")** is and was a municipal corporation existing under the laws of the State of California. At all relevant times, Defendant COLA is and was a municipal corporation existing under the laws of the State of California. At all relevant times, COLA was the employer of Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy and Does 1-10**, who are believed to be residents of the County of Los Angeles, California. **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy and DOES 1-10** are sued in their individual capacity.

6.      At all relevant times, Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy and DOES 1-10** were duly authorized employees and agents of County, who were acting under color of law

**COMPLAINT FOR DAMAGES**

within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant COLA. At all relevant times, Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy and DOES 1-10** were duly appointed officers and/or employees or agents of COLA, subject to oversight and supervision by COLA's elected and non-elected officials.

7.      In doing the acts and failing and omitting to act as hereinafter described, Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy and DOES 1-10** were acting on the implied and actual permission and consent of COLA.

8.      The true names of **Defendants DOES 1-10**, inclusive, are unknown to Plaintiff, who otherwise sue these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these defendants when they have been ascertained. Each of the fictitiously-named defendants is responsible in some manner for the conduct or liabilities alleged herein.

9.      At all times mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

10.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

11.     On the morning of June 11, 2020, Plaintiff was with decedent Michael Thomas ("Mr. Thomas") at her residence, located at 606 West Avenue H-12 in the City of Lancaster.  Mr. Thomas was Ms. Smith's life partner of 22 years.

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

12.     Ms. Smith is a disabled adults. On June 11, 2020 Defendants LASD dispatched **Deputy Ty Shelton ("Deputy Shelton"), Deputy Ruben Perales ("Deputy Perales"), Deputy Kyle Murphy ("Deputy Murphy"), and Deputy Louie Herrera ("Deputy Herrera,"** "Defendants" or "Deputies," collectively) to the home to investigate a potential domestic violence situation.

13.     At approximately 5:50 a.m., Defendants arrived at the front door of the home and requested to come inside. The front door of their home included both an outer screen security door and an inner wooden door. Deputies knocked on the door and Mr. Thomas opened the wooden door and began speaking with Deputies through the locked screen door.

14.     Mr. Thomas informed **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy** that everything was fine and told **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy** that they could not enter his home without a warrant.

15.     Defendants remained on the front porch of the home for two minutes before entering. Defendants claim they were investigating a false emergency call pursuant to <u>Penal Code</u> §148.5 and told Mr. Thomas and Plaintiff to open the door so they could enter the home without a warrant. Defendants commanded Mr. Thomas to exit the home, and separately attempted to enter the home without a warrant. Mr. Thomas declined to exit the home and told officers he would comply with all commands if Defendants returned with a warrant to enter his home.

16.     Despite not personally observing that a crime had occurred in the two minutes they observed Mr. Thomas and Plaintiff, Defendants forcibly entered the home and physically restrained Mr. Thomas, without a warrant or permission from him or Ms. Smith. After entering the home, Defendants forcibly grabbed Ms. Smith, without a warrant for her arrest or without having any information that she had

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

committed a crime. In the 2 minutes Defendants observed Mr. Thomas from the porch area, he was not a threat to officers or Ms. Smith. He did not assault anyone or commit any crimes against anyone.

17. After forcibly entering the home, Defendants **Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy**, began to assault and punch Mr. Thomas. One deputy restrained him by placing him in a headlock, and the other grabbed Mr. Thomas' left arm.

18. While restraining Mr. Thomas, two other deputies approached Ms. Smith, forcibly grabbed her and moved her away from Mr. Thomas. After pushing her away from Mr. Thomas, deputies positioned themselves on each side of Ms. Smith, as she stood roughly eight feet from Mr. Thomas.

19. Next, Deputy Shelton entered the home and discharged his firearm at Mr. Thomas. Before opening fire, Mr. Thomas was not a threat to the officers or Mr. Smith during the encounter – he was unarmed, restrained and did not pose any threat of violence to deputies Ms. Smith.

20. After the shooting Mr. Thomas fell backwards on his back. Witnessing the unlawful shooting, Ms. Smith tried to go to his side as he lay wounded, but Deputy Shelton pointed a weapon at Ms. Smith from approximately 3 feet away and told her to back away from Mr. Thomas. Fearing for her life, Ms. Smith ran to a back room of her home. She was unarmed and was not a threat to any officers at the time.

21. Mr. Thomas died as a result of gunshot wounds inflicted by **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy**. As a direct and proximate cause of witnessing the unlawful shooting death of her life partner, Mr. Thomas, and DOE Deputy 5 pointing his gun at her without any legal justification, Ms. Smith has suffered and continues to suffer severe emotional trauma and mental anguish.

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

22. In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiffs, justifying an award of punitive damages under federal and California law against each individual defendant.

**Participation, State of Mind and Damages**

23. All Defendants acted under color of law.

24. Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

25. As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

26. Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

27. Each Defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors, for an investigation free of active concealment of material facts, and/or for the Plaintiff's right to due process of law.

28. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

29. Due to the acts of the Defendants, Plaintiff has suffered and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

as mental and physical pain and injury. For such injury, Plaintiff will incur significant damages based on psychological and medical care.

## FIRST CLAIM FOR RELIEF

**Deprivation of Civil Rights – Unreasonable Search (42 U.S.C. § 1983)**

**(By Smith Against Defendants DEPUTY TY SHELTON, DEPUTY RUBEN PERALES, DEPUTY LOUIE HERRERA and DEPUTY KYLE MURPHY; And Does 1-10)**

30.    Ms. Smith repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

31.    This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

32.    The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures, including the right to be free from unlawful entry into home. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

33.    Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy; And Does 1-5** acted under color of state law.

34.    Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy; And Does 1-5** violated Ms. Smith's right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, when Defendant Deputies entered Ms. Smith's home without a warrant, without consent from Ms. Smith or another resident of the home, without reasonable suspicion or probable cause to believe that Ms. Smith or Mr. Thomas had committed a crime or that a crime was being committed and without any exigent circumstances.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

[2022.03.25] p-complaint.docx                    7

35.     The conduct of **Defendants Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy; And Does 1-5** was willful, wanton, malicious, and done with reckless disregard for Ms. Smith rights and safety, and therefore warrants the imposition of exemplary and punitive damages.

36.     As a result of the conduct of Defendants, they are liable for Plaintiffs' injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

37.     Ms. Smith brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

**SECOND CLAIM FOR RELIEF**

**Fourth Amendment – Unlawful Arrest (42 U.S.C. § 1983)**

**(By Smith Against Defendants DEPUTY TY SHELTON, DEPUTY RUBEN PERALES, DEPUTY LOUIE HERRERA and DEPUTY KYLE MURPHY; And Does 1-10)**

38.     Ms. Smith repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

39.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable or excessive force. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

40.     Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy; And Does 1-10** while acting under color of law as a Deputy Sheriff, used excessive force against Ms. Smith when they grabbed her by her arms and moved her from Mr. Thomas before shooting him. The unjustified use of force by Defendants deprived Ms. Smith of her right to be secure in her person

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

against unreasonable searches and seizures as guaranteed to her under the 4th amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.     As a result of the foregoing, Ms. Smith suffered physical pain and emotional distress, loss of enjoyment of his life.

42.     The conduct of Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy** was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Ms. Smith, and therefore warrants the imposition of exemplary and punitive damages.

43.     The use of force on Ms. Smith at the time of the incident was excessive and unreasonable, and Ms. Smith posed no immediate threat to herself or any of the deputies at the time of the incident. Further, the conduct of the defendants violated their training and standard police officer training with respect to the same.

44.     Ms. Smith brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

### THIRD CLAIM FOR RELIEF

### Fourth Amendment – Excessive Force (42 U.S.C. § 1983)

### (By Smith Against Defendants DEPUTY TY SHELTON, DEPUTY RUBEN PERALES, DEPUTY LOUIE HERRERA and DEPUTY KYLE MURPHY; And Does 1-10)

45.     Ms. Smith repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

46.   The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable or excessive force. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

47.   Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy; And Does 1-10** while acting under color of law as a Deputy Sheriff, used excessive force against Ms. Smith when they pointed a weapon at her from roughly 3 feet away, without legal justification, after having shot Mr. Thomas. The unjustified use of force by Defendants deprived Ms. Smith of her right to be secure in her person against unreasonable searches and seizures as guaranteed to her under the 4th amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

48.   As a result of the foregoing, Ms. Smith suffered physical pain and emotional distress, loss of enjoyment of his life.

49.   The conduct of Defendants **Deputy Shelton, Deputy Ruben Perales, Deputy Louie Herrera, Deputy Kyle Murphy** was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Ms. Smith, and therefore warrants the imposition of exemplary and punitive damages.

50.   The use of force on Ms. Smith at the time of the incident was excessive and unreasonable, and Ms. Smith posed no immediate threat to herself or any of the deputies at the time of the incident. Further, the conduct of the defendants violated their training and standard police officer training with respect to the same.

51.   Ms. Smith brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

**COMPLAINT FOR DAMAGES**

**FOURTH CLAIM FOR RELIEF**

**Deprivation of Civil Rights – Custom, Practice or Policy Causing Violation of Civil Rights – (42 U.S.C. § 1983)**

**(By Smith Against Defendant County of Los Angeles And Does 6-10)**

52.     Ms. Smith repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

<u>Pattern and Practice of Profiling, Harassment and False Reports</u>

53.     For years, Defendant COLA and the Los Angeles Sheriff's Department ("LASD") have had a pattern and practice of harassing and profiling black and Latino residents of Los Angeles County. LASD deputies routinely fail to articulate facts sufficient to support the predicate of reasonable suspicion required for a lawful detention.

54.     This pattern or practice of misconduct violates the Constitution and federal law through: the use of unreasonable force in violation of the Fourth Amendment; and discrimination against African-American residents of the County of Los Angeles on the basis of race without probable cause; Deputy log entries instead provide conclusory statements such as: "persons acting suspiciously," "925" (internal LASD radio code for "person acting suspiciously"), or "hanging out in narco area."

55.     During one encounter, for example, in 2016, two LASD deputies handcuffed and detained a domestic violence victim in the back of a patrol car for no articulated reason.

56.     Moreover, the LASD stops and searches African Americans and Latinos in the County are based in part on impermissible consideration of race or ethnicity. Historical data suggests a clear racial disparity for African Americans when stopped for offenses where law enforcement discretion is greatest. Such charges include

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

offenses such as crossing against a traffic light, jaywalking, failing to yield right of way, or walking on the wrong side of the street. With regard to highly discretionary pedestrian stops and searches, regression analysis of LASD data indicate that that an African-American pedestrian in Lancaster is over 25% more likely than a white pedestrian to be stopped for a discretionary offense. A large number of these stops, for minor offenses such as jaywalking, also resulted in questionable pat downs and consent searches.

57.    LASD also continues a pattern and practice of using force and arresting someone only for obstruction of justice, thus raising the question of what legitimate law enforcement objective was being obstructed.

58.    LASD has been on notice of the need to focus on this issue since at least 2010, when LASD's Special Counsel issued a report on obstruction arrests and related use of force in the Antelope Valley. The Special Counsel noted that LASD patrol areas, such as Lancaster and Palmdale had a high rate of obstruction arrests when compared to the rest of LASD, with the number of obstruction arrests at Lancaster and Palmdale stations accounting for 25% of all obstruction arrests by LASD and exceeding the number of obstruction arrests for every other station. Lancaster and Palmdale also reported disproportionately high proportions of African Americans arrested for obstruction. The report also noted that, based on 2007 data, 30% of Palmdale's arrests where obstruction was the highest charge involved a reported use of force, and 24% of Lancaster's obstruction arrests involved a reported use of force.

59.    That trend continues in the recent years. Plaintiff is informed and believes, and on that basis alleges roughly 65% of the uses of force involving LASD deputies where the only charge was obstruction-related involved targets who were African American or Latino. In felony obstruction-only arrests, 88% involved victims

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

**COMPLAINT FOR DAMAGES**

who were people of color. This is an extraordinarily disproportionate number of obstruction charges involving use of force against people of color.

60.     This pattern has existed for decades, as evinced by the following examples:

A. **Darrick Collins.** On or about September 14, 2009, a Los Angeles County Sheriffs Deputy chased Collins up his driveway and into his own backyard, believing he was a robbery suspect.  The deputy fired at Collins through a wooden gate, fatally hitting him in the back of the neck. Collins presented no threat to life or serious bodily injury. There was no discipline for this incident.

B. **Johnathan Cuevas.** On or about October 10, 2010, a Los Angeles County Sheriffs Deputy shot and killed Johnathan Cuevas. The  deputy stopped next to men walking, without reasonable suspicion to believe they had committed a crime, or probable cause to arrest them. Cuevas ran and fell, then the deputy shot him on the ground. There was no discipline for this.

C. **Rigoberto Arceo.** On or about May 2013, a Los Angeles County Sheriffs Deputy shot and killed Rigoberto Arceo. A Los Angeles County Sheriffs Deputy L. Mendoza, ordered Rigoberto to the ground. Rigo with his hands raised in the air, was telling Deputy Mendoza that he did not have to do anything, when the deputy shot him once in the chest. In order to try and justify the shooting Deputy Mendoza claimed that Rigo was trying to grab his gun. However, independent percipient witnesses who saw the shooting, described Rigo as having his hands raised over his head when he was shot and that he was approximately 10 feet away from the

deputy when the deputy shot and killed him. Rigoberto Arceo was unarmed. There was no discipline for this incident.

D. **Antoine Hunter and Geremy Evans.** On or about June 24. 2014, Los Angeles County Sheriff Deputies Timothy Lee and Gregory Rodriguez, shot and killed Antoine Hunter and severely wounded Geremy Evans. Antoine Hunter and Geremy Evans were in a vehicle that had come to a stop when the Deputies poured shots into the vehicle. Hunter did not have a gun in his hand. Evans dove in the back seat and was totally unarmed while the Deputies shot at him when he posed no threat whatsoever. COLA and LASD knew that Gregory Rodriguez was a member of a sheriff's gang and that he had gang tattoos but they withheld this information, including while represented by the same counsel who represent the deputies in the current case. Deputy Gregory Rodriguez aka "G-Rod" is one of the Deputies named in government claims filed by fellow deputies regarding a beating of fellow deputies from the East LA Station that took place in September, 2018. Although that beating of fellow sheriff's deputies by Banditos gang members took place in September, 2018, the Banditos gang existed on and before the January 28, 2019 detention and arrest of Mr. Glazier. This is part of a consistent pattern of COLA and LASD hiding information regarding deputy gang membership and is a moving force to deputies using excessive force knowing there are no consequences and that their use of force will always be ratified by COLA and its LASD. There was no discipline for this incident.

E. **Raymond Davidson.** On or around July 17, 2007, 73 year old Raymond Davidson was on the premises of a barbershop in Los Angeles, County.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

Without probable cause or reason to suspect a crime, Deputy Chamness faced Mr. Davidson and repeatedly pepper sprayed in the face and eyes. After being pepper sprayed, Mr. Davidson was forced to stand in the heat without medical assistance. Mr. Davidson was criminally charged in that case with 3 others, and those charges were dismissed on October 23, 2007.  There was no discipline for this incident.

F. In 2013, 80 year old Eugene Mallory was shot 6 times and killed in his home in Palmdale. Prior to the shooting, LASD officers claimed they were searching the home for evidence of a methamphetamine raid. No drugs or weapons were found on the premises.

61.    On October 13, 2013, Nolan Hillis, a 26-year-old developmentally challenged male who suffered from an intellectual disability and seizure disorders, was tased and unlawfully arrested by LASD Deputies Sahinbas and Ajufoh while waiting for a bus to arrive at a Metro Station in Los Angeles, CA. The deputies each wrote arrest reports indicating that Mr. Hillis became angered and approached Deputy Sahinbas in an aggressive manner when Deputy Sahinbas requested proof of fare. However, video evidence showed differently. The video shows Deputy Ajufoh drawing and pointing his service weapon at Mr. Hillis while Deputy Sahinbas pushes Mr. Hillis. Without warning, Deputy Sahinbas then drew his taser and tased Mr. Hillis causing him to fall down a flight of stairs. Mr. Hillis was arrested for battery on a peace officer PC 243(b). The criminal case was dismissed against Mr. Hillis and Deputy Sahinbas' supervisor discussed with him how different methods could have been used to avoid the confrontation, but did not discipline him.  or about June 26, 2008, Moore and he ran, jumped over a fence holding his waist, and when officers ordered him to raise his hands, he looked at the Deputies, who shot him to death. Moore represented no threat to life or serious bodily injury.

**COMPLAINT FOR DAMAGES**

62.     From November 2015 to November 2020, there were 133 LASD deputy shootings. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant COLA, all of which are believed to be the moving force as to the illegal use of force on Ms. Smith, as well as the unlawful entry of her home:

A.  **Unreasonable Force**: On December 20, 2015, Leroy Browning was shot and killed by LASD Deputy Brett Nolin after a car crash in Palmdale, without warning. Mr. Browning was not posing a threat to any officer before he was shot. Deputy Nolin was not disciplined for the shooting.

B.  **Unreasonable Force**: On January 12, 2016, Jeremy A. James was shot and killed by LASD Deputies Christopher Keeling and Jeremi Edwards in the City of Lancaster. Deputies Keeling and Edwards were not disciplined for the shooting.

C.  **Unlawful Entry into Home and Excessive Force**. On or about January 4, 2017, Bryan Joshua Cook was sitting in the living room of his residence located in San Dimas, California when the Defendant deputies entered his home and unjustifiably tased him. Allegedly, Mr. Cook and his wife had been arguing earlier in the day and Mr. Cook's father-in-law called 911 because he did not like the fact that they were arguing. As the Deputies walked through Mr. Cook's home, Mr. Cook was sitting on his couch drinking water and no crime was in progress nor did the officers observe any sign of a physical altercation or weapons. After seeing the deputies in his home, Mr. Cook immediately asked the deputies if they had a warrant and repetitively requested the deputies leave his home. At some point, Deputy Dondanville informed Mr. Cook that he wanted search him for weapons. Mr. Cook responded,

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

"Do not to touch me." Then, Mr. Cook stood up from his seated position and Deputy Dondanville tased him without warning or legal justification. Deputy Dondaville falsely arrested Mr. Cook for resisting, delaying or obstructing a public officer in violation of Penal Code Section 148(a)(1). This charge was ultimately dismissed and Mr. Cook filed a civil action that is pending. There was no discipline for this incident prior to the unlawful entry into the home of, unlawful and excessive seizure of Ms. Smith.

D. **Failure to train**: Defendants COUNTY and LASD have failed to properly train its officers on how to handle situations where officers encounter a perceived threat;

E. **Pattern of Failing to Investigate Civilian Complaints:** Defendant COUNTY and LASD refused to adequately investigate civilian complaints concerning deputy misconduct, including but not limited to, discriminatory policing and the use of deadly force;

F. **Prior knowledge of corruption**: Defendants COUNTY and LASD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LASD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiffs' liberty interests;

G. **Failure to adequately discipline**: Defendants COUNTY and LASD refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

H. **Pattern and Practice of Poor Investigation**: Defendants COUNTY and LASD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by COUNTY and LASD employees;

I. **Pattern & Practice of Intimidation**: Defendants COUNTY and LASD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other COUNTY and LASD employees;

J. **Practice of Code of Silence**: Defendant COUNTY and LASD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

K. **Failure to adequately supervise**: Defendant COUNTY and LASD failed to adequately supervise the actions of employees under its control;

L. **Practice of Encouraging Excessive Force**: Defendant COUNTY and LASD tacitly condones and encourages use of excessive force on citizens;

M. **Atmosphere of lawlessness**: Defendant COUNTY and LASD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by June 11, 2020, and thereafter, represented the unconstitutional policies, practices and customs of the COUNTY and LASD;

N. **LASD Deputy Gangs**:

    i. The "Rattlesnakes" are a deputy gang operating out of the Palmdale and Lancaster stations in the Antelope Valley. Rattlesnakes members share a common tattoo of a skull and a snake, but it is unknown if the tattoo is sequentially numbered. The U.S. Department of Justice in 2013 issued a report finding

**COMPLAINT FOR DAMAGES**

that deputies "engaged in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force, in violation of the Fourth Amendment, the Fourteenth Amendment, and Title VI." The DOJ also found deputies assigned to these stations engaged in a pattern or practice of discrimination against African Americans living in federally subsidized housing in violation of the Fair Housing Act. The DOJ report notes: "Some Antelope Valley deputies wear tattoos or share paraphernalia with an intimidating skull and snake symbol as a mark of their affiliation with the Antelope Valley stations. Though there are varying interpretations of what these tattoos symbolize, they provide an undeniable visual representation of a gulf between deputies and the community and are an unfortunate reminder of LASD's history of symbols associated with problematic deputy behavior." Defendant COUNTY and LASD knew of the existence of deputy gangs who violate the civil rights of residents in Los Angeles County prior to the killing of Mr. Thomas and forced used on Ms. Smith. On information and belief, Defendant County and LASD has not done anything to remove the deputy gangs from LASD;

ii.  The "Cowboys" are a deputy clique that operates out of multiple locations, including Century and Palmdale stations. Cowboys members have a common tattoo on the leg that is sequentially numbered. The tattoo depicts a skull in a cowboy hat. In 2018 Oleg Polissky, a deputy in the Palmdale station, testified that he received a Cowboys tattoo while accompanied by several deputies

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

and was then celebrated at a gathering of at least twenty deputies, some of whom had the same tattoo. Polissky claimed the Cowboys tattoo signified "that no person has less rights than any other person" and that "you treat the public equally and without bias." and

O. **Brady List**: Defendant COUNTY and LASD maintained a list of deputies who have engaged in misconduct ("Brady List") and has refused to produce the list despite various court orders to do so in various cases. Defendant COUNTY and LASD's refusal to produce the Brady List emboldens deputies who engage in misconduct as they know that their wrong acts will not be shared with the public.

63. The LASD currently possesses an obstructive custom and practice designed to discourage meaningful oversight over rogue employees. At all times herein mentioned, there was a custom and practice of practice of allowing the sheriff deputies to regularly deploy excessive force or harass citizens, particularly African Americans, with impunity. In particular, Deputies employed by Defendants COLA and LASD harassed citizens without probable cause, caused criminal charges to be filed against citizens to avoid civil liability and used excessive force on persons who were unarmed and/or did not represent a threat to life or of serious bodily injury as identified below. These deputies encouraged, and in some cases directly participated, in the filing of criminal charges in similar cases where citizens exercised their rights under the United States Constitution.

64. These aforementioned incidents did not result in discipline and this culture of a lack of accountability was a moving force in the detention, search and use of force of Ms. Smith. Following the use of force, Deputies falsified police records

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

and public documents to justify discharging the weapon on Mr. Thomas and the illegal search of the home.

65. The following list exemplifies the aforementioned policies, customs, practices and usages of Defendant COUNTY and its Sherriff 's department:

A. On April 28, 2015, the United States Department of Justice ("DOJ") filed a complaint (*United States of America v. The County of Los Angeles and The Los Angeles County Sheriff's Department, Case No. CV 15-03174 (C.D. Cal. 2015*)) against COUNTY alleging that LASD engages in a pattern or practice of discriminatory and otherwise unlawful searches and seizures, including the use of unreasonable force, in violation of the Fourth Amendment, the Fourteenth Amendment and Title VI. The complaint was based on a study performed by the DOJ of the LASD's policing of the Antelope Valley community consisting of Lancaster and Palmdale communities ("Antelope Valley"). The complaint alleged that deputies engaged in a pattern or practice of discrimination against African-Americans in violation of the Fair Housing Act. The findings of the abovementioned study performed by the DOJ of the LASD's policing of the Antelope Valley community were summarized in a letter addressed to LASD Sheriff Baca.[1] Specifically, the DOJ found that LASD deputies in the Antelope Valley:

    i. engaged in a pattern or practice of deploying unreasonable force with respect to the use of unreasonable and/or retaliatory force against handcuffed individuals, in violation of the Fourth Amendment;

---

[1] Perez, T. E. (2013, June 28). Investigation of Los Angeles Sheriff's Department Stations in Antelope Valley [Letter to Sheriff Leroy D. Baca].

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

ii.   used excessive force against individuals who have already been taken into custody, handcuffed, or otherwise restrained. These uses of force are unjustified based on the diminished threat posed by the restrained suspects;

iii.   used unreasonable force in retaliation for being treated disrespectfully, including using unreasonable force against individuals who are handcuffed or where the threat posed by the individual has passed; and

iv.   often deviated from official LASD policies and trainings which allowed the deputies to violate the constitutional rights of Antelope Valley community members without reprise.

B.   The DOJ study also found that between 2010 and 2011, "civilians filed at least 25 complaints regarding deputies' discriminatory conduct, including at least two complaints alleging that deputies used racially derogatory language (with one of those remarks captured on a video recording)."[2]   The DOJ concluded, "LASD's handling of civilian complaints of discrimination in the Antelope Valley is deficient to the point that, rather than acting as an effective accountability mechanism, it reinforces deputy misconduct, including bias. When civilian complaints are very rarely elevated to administrative investigations, and deputies know that the worst practical consequence for improper treatment of an individual is a 'should have been different' disposition and non-disciplinary corrective action, then the accountability system fails. LASD's current system for conducting service reviews serves to perpetuate patterns of improper community interactions because it

---

[2] Id.

[2022.03.25] p-complaint.docx                    22

**COMPLAINT FOR DAMAGES**

provides no incentive for deputies to behave in accordance with LASD's strong policies prohibiting bias. *When assessed within the totality of the circumstances, LASD's failure to appropriately handle discriminatory policing complaints provides evidence of an equal protection violation"* (emphasis added).[3]

C. As a result of the lawsuit, the parties entered a settlement agreement[4] wherein the COUNTY agreed to 1) revise its policies and trainings to ensure that the constitutional rights of the Antelope Valley community members were not violated; 2) provide LASD deputies with training on stops, searches, and detentions; 3) implement additional accountability and supervision practices and ensure that existing policies are followed to ensure that unlawful stops, searches and seizures are detected and effectively addressed; and, specifically in regards to use of force, revise its policies and associated training materials to abide the following requirements:

    i.   "LASD agrees to clarify that Antelope Valley deputies may not use force against individuals who may be exhibiting resistive behavior, but who are under control and do not pose a threat to the public safety, themselves, or to other deputies....";

    ii.   "LASD agrees to explicitly prohibit the use of retaliatory force, particularly against subjects who express criticism of, or disrespect for, LASD Antelope Valley deputies"; and

    iii.   "LASD shall provide all Antelope Valley deputies with annual or biennial use of force training."

---

[3] Id.

[4] Settlement Agreement, *United States of America v. The County of Los Angeles and The Los Angeles County Sheriff's Department*, Case No. CV 15-03174 (C.D. Cal. 2015)

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

D. The parties agreed that a monitor, who is subject to the supervision and orders of the Court, would oversee the terms of the agreement to access the COUNTY'S progress in implementing, and achieving compliance with, the Agreement and report on the status of implementation to the Parties and the Court.[5] However, reports indicate that the COUNTY is not implementing the changes that were agreed to be necessary to stop deputies from violating the constitutional rights of Antelope Valley residents.

E. In June of 2020, the monitor published a report[6] indicating that the LASD was "out of compliance" with the use of objectively reasonable force and force used for resistive behaviors. Said report also indicated that LASD was "out of compliance" with the prohibition of use of retaliatory force.[7] This report further indicated that the revision of the LASD Use of Force Policy was taking too long to be reviewed by LASD executives and labeled the length of time as "unacceptable".[8] Specifically, it found that "the failure of LASD command staff to complete their review and approve the policy in a timely manner reflects a lack of diligence and commitment to carrying out the [Settlement Agreement's] mandates."[9]

F. In February 2021, County of Los Angeles Office of Inspector General published "Los Angeles County Sheriff's Department: Review and

---

[5] Id.
[6] *Antelope Valley Monitoring Team 10th Semi-Annual Report* (Rep. No. 10). (June, 2020), https://lasd.org/wp-content/uploads/2020/09/A V-6-Month-Report-X-Jan-June-2020-.pdf.

[7] Id.
[8] Id.
[9] Id.

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

Analysis of Misconduct Investigations and Disciplinary Process."[10] Said publication confirms the following:

    i.  LASD policy places no affirmative duty on department members to report employee misconduct to the employee's unit commander.[11] This failure allows misconduct to run rampant throughout LASD.

    ii.  Similarly, LASD policy allows the Internal Affairs Bureau to disregard misconduct of employees who are explicitly identified in their request.[12] This failure gives the illusion of internal oversight but allows misconduct to go unchecked.

    iii.  There exists a code of silence within the LASD that places significant pressure on unit commanders not to initiate internal investigations of employee misconduct. Once an internal investigation has commenced, there is a code of silence where deputies refrain from cooperating with investigations into misconduct of fellow deputies. "Deputies are required by written policy to cooperate with investigations; however, it is the [LASD]'s practice to allow deputies to decline to provide information in investigations of their fellow deputies."[13]

66.    At all times herein mentioned, Deputies employed by Defendant COLA and its sheriff department were, and are, regularly using excessive force and harassing citizens with impunity as indicated above. In particular, LASD Deputies

---

[10] County of Los Angeles Office of Inspector General published "Los Angeles County Sheriff's Department: Review and Analysis of Misconduct Investigations and Disciplinary Process (February 2021), https://oig.lacounty.gov/Portals/OIG/Reports/IIPublicReport_Body.pdf?ver=lLcShzwX4E2s_NB5lqlGQw%3d%3d

[11] Id.
[12] Id.
[13] Id.

employed by Defendant COLA harassed citizens without probable cause and used excessive force on persons who were unarmed and/or did not represent a threat to life or of serious bodily injury as identified below. These deputies encouraged, and in some cases directly participated, in engaging in excessive force in similar cases where citizens exercised their rights under the United States Constitution. These incidents did not result in discipline and this culture of a lack of accountability were a moving force in DOE Deputies and was a moving force in the unlawful entry of Ms. Smith's home, unlawful seizure of and excessive force against Ms. Smith.

67.    The detention and arrest policy adopted by Defendant COLA caused Plaintiff's constitutional violation and his injuries, including severe pain and suffering, mental anguish, humiliation, and emotional distress.

68.    Defendants COLA together with other various other officials, whether named or unnamed, had either actual or knowledge of the LASD policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

69.    Plaintiff brings this claim in their individual capacities and in each case seek compensatory damages, including loss of consortium, past and future financial loss, physical injuries, and emotional and mental distress for the violation of Plaintiffs' rights. Plaintiffs also seek punitive damages and attorney's fees under this claim.

**COMPLAINT FOR DAMAGES**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

## **PRAYER**

WHEREFORE, Plaintiffs pray judgment against Defendants and each of them, as to all Claims for Relief as follows:

    A. For compensatory, general, special and incidental damages, in amounts according to proof at trial;

    B. For costs of suit;

    C. For reasonable attorneys' fees under federal and state law, including a multiplier and litigation expenses;

    D. For prejudgment interest;

    E. For such other equitable or legal relief as this Court deems just and proper.

    F. For punitive and exemplary damages only as provided by federal and state law, in an amount to be proved against each individual Defendant;

    G. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: March 25, 2022               Respectfully Submitted,

                                 **FILER | PALMER, LLP**

By: _____
                      Justin A. Palmer
                      Attorneys for Plaintiff
                      KIMBERLY SMITH

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

**COMPLAINT FOR DAMAGES**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


Dated: March 25, 2022                                    Respectfully Submitted,

                                                                    **FILER | PALMER, LLP**



By: _____
                                                    Justin A. Palmer
                                                    Attorneys for Plaintiff
                                                    KIMBERLY SMITH

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

[2022.03.25] p-complaint.docx                              1

**COMPLAINT FOR DAMAGES**